May it please the Court. Good morning. Niels Frenzen for the Petitioner Mohamed Hussein. This is also an appeal from a denial of asylum, withholding of removal and protection under the Convention Against Torture involving a petitioner from the Sudan. In this case, the Court is reviewing the Immigration Court's decision because the Board of Immigration Court decision. The Immigration Judge in the... He was found credible here, correct? The petitioner was found by the... He was found with credible testimony. The judge credited fully his testimony yesterday. We're really talking about whether he has a reasonable fear of future persecution. Yes. Without a finding of past persecution. We did not claim past persecution and this is based upon whether or not the respondent, the evidence in the record supports the finding that he has a reasonable fear of future persecution. The in our view, a boilerplate decision. It's a 9 or 10 page decision which summarizes accurately the law but does not discuss the extensive factual record in this case. And we think that is why the Immigration Judge's decision ought to be reversed by this Court. As Judge Paez was saying, the Immigration Judge found Petitioner Hussein to be credible, found that he had joined an opposition party, an outlawed opposition party that he had joined while he was in his first year of high school in Khartoum. The Immigration Judge accepted that the petitioner's family has a long history of political involvement in the Sudan. Basically we're dealing with four generations of political activists in this case. But the judge ignored that evidence and instead denied asylum based upon three factors. One was a short trip that Mr. Hussein took to the United Kingdom before he entered high school in Khartoum and the judge focused on the fact that Petitioner Hussein returned to the Sudan and took that to mean that that must mean that the petitioner had no fear of returning, no fear of persecution excuse me. The Immigration Judge also focused on the fact that Petitioner's mother who had been living in Egypt after fleeing Sudan with the petitioner's father and younger sister returned to the Sudan for a brief visit in 2002. The Immigration Judge basically concluded that since the mother was returned briefly to the Sudan that must somehow indicate that the petitioner himself did not have a well founded fear of persecution in the Sudan. And then thirdly the judge focused on the fact that Petitioner speculated that Petitioner could find safe haven in Egypt, the country which Petitioner himself had never visited. The judge, one of the most important pieces of evidence in the record is the country report on human rights from the U.S. Department of State. The Immigration Judge cited this document by name when he briefly provided a laundry list of the various exhibits at the beginning of his decision but he did not consider any of the facts that the U.S. Department of State had set forth in this country report. The State Department reports are required by regulation to be included in all asylum case records. They represent the views of the U.S. government. In this case the 2002 country report characterized Sudan as a country with a human rights record that is extremely poor, numerous serious abuses on the part of the security forces and perhaps most importantly to Mr. Hussein's case the State Department reported that there are quote credible reports suggesting that the number of student victims of torture had increased during the year. This is the background evidence that goes to the issue of whether or not Petitioner's Hussein's fear is reasonable or not. The Immigration Judge ignored that. How do you distinguish our en banc decision that we recently issued with regard to the Indonesian Christian woman? She was basically making the same argument that you're making to us here which was that because Christians were persecuted by Muslims in Indonesia although she had not herself experienced direct persecution she had a reasonable fear that if she returned to Indonesia she would be persecuted. It seems to me pretty analogous to this case. Well I think it's analogous to the extent that Hussein's claim is based upon future fear persecution based upon association with an outlawed political party but Petitioner Hussein's claim is also based upon the fact that his brother and sister were political activists. His brother actually was tortured. His brother and sister both received asylum from the Immigration and Naturalization Service in the years immediately I believe it was a year or two before Petitioner arrived in the United States in 2003. Petitioner's father was forced into exile. Petitioner's grandfather died not under the current military government but under an earlier military government. Petitioner's grandfather died as a result of his political activities with the same political party. So the fears that Hussein have are much more tied into the activities He also actually engaged in political activities. That's correct your honor. He actually I mean the government correctly describes this as I believe incipient activities. These were just his beginning activities with the Democratic Union Party the outlawed opposition party as a young high school student a first year high school student. But he actually was did engage in in political activities on behalf of the DUP and the immigration judge credited that testimony. Does it matter that the persecutors were different going back in the various generations because didn't the grandfather die under British rule? I believe the grandfather was actually executed by the British colonial authorities. I don't think that carries much weight in regard to this case whatsoever. Directly I think it certainly does show the length of this family's history as I was saying four generations of political activities with this particular opposition party. I think it is more relevant in terms of the reasonableness of petitioners fear is what has happened to his brother who was tortured and what has happened to his father and to a lesser extent his his grandfather and his great grandfather. Well I guess that would go what to sort of a more generalized argument that this has historically always been a very unstable dangerous country. That as well as that this is a particular family as we cite in the government. Seems to anger whoever is in charge. That's true. Even though the DUP was in power I believe in a coalition government for a short period of time in the 1980s. So the political activity of the family as well as obviously thousands of other individuals bore some success. Just in regard to because I do want to reserve a minute or two in regard to two of the facts that the immigration judge did focus on the fact that the petitioner had gone to the United Kingdom in 2000 or 2001. The immigration judge seemed to place most of his basis for his decision is based upon the fact that Hussein returned after this three month trip to the United his act his political activities on behalf of the opposition party in in in in in high school. Not irrelevant but we certainly think there is plenty to explain why. And indeed the petitioner testified the immigration judge specifically asked him about this. The petitioner specifically testified that he feels he is in greater danger today if he's forced to return to the Sudan because of the political activities that he that he engaged in. What do we do with the IJ's finding? I think it was a finding but his observation that there was a fear here of conscription now because of his age. We we have not pursued that appeal. We've before this court we think the Supreme Court decision Elias Zacharias complicates those. So you would have to concede that under Elias Zacharias that that that is a proper consideration for the IJ to remark upon. Absolutely on that on a claim based upon forced conscription. We think the factual the fact that he was fearful of conscription explains goes to explaining why Petitioner Hussein left Sudan when he did. That was one of the reasons his mother returned to get him and out him and his sister out of the Sudan was because there was this fear of forcible conscription. But we don't think that gives us a basis for asylum at this time. So if I take your minute for. Yes. May it please the court I'm Wendy Keats with the Department of Justice representing the respondent. Petitioner Hussein claims eligibility solely on the basis that he fears future persecution by the government of Sudan because of his own or his family's political opinions. This court has made clear that the question of objectively reasonable fear depends on facts in the record that on which a burden based on his own opinion. He says he came to me. Well he did. He came to the United States in April 2002 when he was 14 years old. At the hearing he testified as Judge Talmadge observed that he left because he was afraid to be conscripted and because in general of his family's political prominence. Before he left Khartoum he was a first year high school student. He had done just this much in terms of attending seven or eight small secret neighborhood meetings with nine or 10 other students. And he had covertly distributed DUP flyers to friends at high school. That was the sum total of his political activity. There is no evidence in this record that the government of Sudan was in any way aware of this activity was surveilling this activity had any reason to know about this act. Does our case law require that the petitioner show that he that the government knew about that activity. Well it does require that there was awareness by the person. Which case do you cite for that for that. I believe that is in low long. I believe that the reason you actually think the government has to be aware of the individual person has to be aware of it in order to put him on his own views. The individual refugee has to demonstrate that the government he's fleeing knows about him. If he is relying on persecution based on his own opinions. You think he does have to demonstrate that if he's relying on imputed political opinions he does not. But what's your best case that stands for that proposition. I believe low long says that. And on also Sangha which was cited in the reply brief also says that. Imputed political opinion that the persecutors. I'm sorry I'm looking up here actual political opinion imputed to him. He has to have shown a publicly expressed political view which was or could easily have been known to his persecutors. That's for imputed. But I do believe that earlier in that decision that's at Sangha is at 103 at 3rd 1482. Here he was politically he just He distributed that to his friends. And was it at the high school or not. Yes. And it was his testimony was found credible. That's right. But he was and the government could have found out about that. Well it was public. It wasn't public. That's the point. His testimony was that he distributed them to trusted friends. He his activity was covert. He kept it covert on purpose. So his own testimony establishes that there was no knowledge at the time. And his argument really is that they could become aware of it. There's no evidence that they do investigate high school activity. The country report the council referred to had to do with university students who were overtly active being persecuted by the government. What chance of persecution does he have to show. He has to show that a reasonable person in his circumstances would have a one in 10 percent. One in 10. Right. At least. Have you thought about that. Your brief doesn't even mention the standard. Well there's no evidence of that the government was aware that he was politically active and no evidence that the government was not active. This is a very oppressive government. I think everybody knows that. He comes from a very prominent political family. He's engaged in subversive activity. And you think he doesn't have a one in 10 chance of something bad happening to him. At the age of 14 he was engaged in very covert very minimal political activity on in a very short period of time. Then he left the country. The record does not show that and has no evidence the government was aware of that activity. And he doesn't have anything else to show that he personally would come to their attention other than his family's prominence. Now on the evidence of his family's prominence the there are family members who were persecuted and family members who were not persecuted even though they hold the same political views. In fact come from the same family that has been active in the same outlawed party. And the most important figure in that is his mother who is from a DUP family and herself was involved in DUP activity at one time. She lived with his active father for 30 years. His father fled the He has an older brother who when active at the university level in fact he was a party secretary who led demonstrations. That brother was persecuted. He has an older sister and was granted asylum here. He has an older sister Ishraga whose claim to asylum was based on her own overt political activity at the university level. Again if he gets him back to Sudan. Keep in mind he has P's and Q's. Doesn't get involved in any political activity. He's OK. That's correct Your Honor. On the basis of what the But if he goes back and continues on with his political activity. That could be the basis of a new departure from Sudan and a new attempt to gain asylum. Maybe he would be able to get out of Sudan if he did that. That's possible Your Honor but we cannot speculate about the future and that's not the basis for a grant of asylum. So you only had to make a 1 in 10 showing that. That is speculation. If I tell you you've got a 1 in 10 chance of winning the case. That's speculation isn't it. But in here we're based on the record at the time of the hearing. You're looking at the total conditions of the country as a major factor. You know it's a terrible place and a lot of countries are terrible places but I believe the case law is clear. This is one of the worst. That is the basis for asylum. I don't know. It's hard for me to think of a worse place. Well again Sudan has a reputation based on a civil war that has ended and on a persecution of non-Arab Muslims. It's a terrible thing. He doesn't fit within either of those categories. So based on the evidence that he presented to support his claim for asylum there is not enough here and certainly not enough for a reasonable fact finder to be compelled to find that he has shown that he even has a 1 in 10 chance of being persecuted on the basis of an imputed opinion from his family's political activity because many members of his family who also equally have the same imputed political opinion have not been targeted and that's the standard he has to or somebody like him, another member of his family who has not been politically active has to be targeted based on the imputed views of his family. And the evidence only shows that the government has targeted people who are overtly active in his family. And that's the sum of his case. If there are no further questions, thank you. I'd just like to address one point and that is the issue of whether or not the government needs, the Sudanese government needs to be aware of the petitioner's activities. Prior to the 1987 Supreme Court decision, Cardozo Fonseca, the Board of Immigration Appeals case law was that an asylum applicant had to show that the persecutor was already aware or could easily be aware of the fact that he was being persecuted on the basis of an imputed opinion from his family. And that he could become aware of the political activities on a direct political opinion claim. Matter of Mogherabi, a 1987 BIA case that is cited in our reply brief, changed that in light of the Cardozo Fonseca recognition that the BIA had been applying too high of a standard of proof in asylum cases and now the Board says that in a direct political opinion case, the asylum applicant only has to show that the persecutor could become aware. Of the political activities and we think the record shows that the Sudanese government could become aware of petitioner's activities. Glad to hear you cite Cardozo Fonseca. A great triumph of 9th Circuit jurisprudence. I remember the day it came out, Your Honor. Thank you, Judge. Thank you, Counsel. Hussain v. Gonzalez will be submitted. Thank you, Counsel.
judges: Noonan, Paez, Tallman